A99A1129. IN THE INTEREST OF C. A. C., a child.
(522 SE2d 236)

ANDREWS, Presiding Judge.

Samuel Deon Callahan appeals from the disposition order of the juvenile court which continued temporary legal custody of his daughter C. A. C. in the Oconee County Department of Family & Children Services and approved of the continued placement of C. A. C. with Larry and Susan Saxon, the paternal grandparents of D. S., C. A. C.'s half sister.

It was stipulated by C. A. C.'s mother, Nicole Saxon, Callahan's former wife, that C. A. C. was a deprived child because Nicole Saxon was unable to care for her and was undergoing drug rehabilitation treatment. Saxon had custody of the child after her and Callahan's divorce. The final judgment of divorce awarded joint legal custody to the parents, but gave physical custody of C. A. C. to Saxon.

C. A. C., seven years old, was the half sister of D. S., aged four. D. S. was the child of Nicole Saxon's second husband, who committed suicide in 1997. D. S. was in the custody of Larry and Susan Saxon, D. S.' paternal grandparents.

A petition alleging that C. A. C. was deprived was filed in August 1998, resulting from a domestic altercation between Callahan and Nicole Saxon. By order of August 21, 1998, temporary custody of both D. S. and C. A. C. was placed with the Department and both children lived with the Saxons.

As a result of the initial 72-hour hearing, Callahan stipulated that, he was ordered to take parenting classes and to undergo anger management training and that he had done neither prior to the October 1998 hearing at issue here. Both the Saxons and Dickson, mother of Nicole Saxon, filed petitions to intervene in the deprivation matter, seeking visitation and custody of the children.

1. Callahan's first enumeration is that the juvenile court erred in finding C. A. C. deprived "absent any evidence that [Callahan] was unfit or otherwise not entitled to custody of C. A. C."

At the beginning of the hearing, Callahan's attorney asked the court

whether or not, (a), we need to address that particular issue [whether C. A. C. was deprived as to Callahan]. I know

there's going to be a placement issue as to where [C. A. C.] is placed. But if there's already a finding of deprivation and since Ms. Saxon is the legal custodial parent of the child, if our next step is to go into a hearing over the placement of the child?

Later, Callahan's counsel stated that, since Ms. Saxon was the primary physical custodian of C. A. C. and the child had been found deprived as to her,

[e]ven if you found that . . . the child is not deprived as to Mr. Callahan, custody would not just return to Mr. Callahan if the petition were dismissed against Mr. Callahan. . . . Because he has joint legal custody. He still doesn't have physical custody of the child.

The court then asked, since there had been a stipulation by Nicole Saxon as to deprivation "would there be any objection if we proceeded on with disposition?" Callahan's counsel, in his presence in open court, stated "No, Your honor. . . . No objection."

Having acquiesced in this procedure and failed to object when given the opportunity to do so, Callahan cannot here complain for the first time. *Standard Guar. Ins. Co. v. Bundrage*, 264 Ga. 632, 633 (452 SE2d 474) (1994); *Allen v. Peachtree Airport Park &c. Co.*, 231 Ga. App. 549, 550 (2) (499 SE2d 690) (1998).

We do not recognize induced error. "Asserted prejudice based upon induced error is impermissible. (Cit.) [Cit.] *Sharp v. State*, 183 Ga. App. 641, 643 (3) (360 SE2d 50) (1987)." *Martin v. State*, 235 Ga. App. 844, 845 (2) (510 SE2d 602) (1998). See also *Outdoor Systems v. Woodson*, 221 Ga. App. 901 (473 SE2d 204) (1996).

2. Callahan's second enumeration is that the court erred "when it placed temporary custody of C. A. C. with a third party [the Saxons] absent any evidence that [Callahan] was unfit or otherwise not entitled to custody."

As reflected in Division 1, however, Callahan acknowledged that Nicole Saxon was the physical as well as joint legal custodian of C. A. C. and that the child was deprived as to the custodial parent.

Therefore, Callahan could not dispute the juvenile court's conclusion that the child was deprived, OCGA § 15-11-2 (8), and there has been no error shown with regard to that finding and the court's placement of temporary legal custody with the Department. As reflected in Division 1, this temporary custody began with the August 21, 1998 order for shelter care for both children. OCGA § 15-11-34 (a) (2).

Once temporary legal custody is placed with the Department, the right to determine "where and with whom [the child] shall live"

also vests with the Department. OCGA §§ 49-3-6; 49-5-3 (12) (D); *In the Interest of J. N. T.*, 212 Ga. App. 498, 499 (441 SE2d 918) (1994); *In the Interest of A. S.*, 185 Ga. App. 11, 12 (2) (363 SE2d 325) (1987). Any effort of the court to direct this decision is "merely exhortatory, and not binding. . . ." *In the Interest of R. D.*, 141 Ga. App. 843 (234 SE2d 680) (1977); *In the Interest of R. L. M.*, 171 Ga. App. 940, 942 (2) (321 SE2d 435) (1984).

Here, the juvenile court's "approving the continued placement of the children" with the Saxons was not binding and provides no basis for finding of legal error by that court.

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 30, 1999.

*Debra M. Finch*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Garcia & Powell, Tony D. Coy*, for appellee.