530 S.E.2d 261 (2000)
243 Ga. App. 1
In the Interest of A.S.O. et al., children.
No. A99A2241.
Court of Appeals of Georgia.
March 1, 2000.
Reconsideration Denied March 21, 2000.
Certiorari Denied September 8, 2000.
*262 Lawrence M. Korn, for appellant.
Kathleen O'Haver, pro se.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General,
*263 William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Sanders B. Deen, Marietta, for appellee.
ELLINGTON, Judge.
Appellant, Kathleen O'Haver, the mother of A.S.O. and N.L.R., appeals from the juvenile court's order terminating her parental rights. The parental rights of the children's fathers were also terminated. O'Haver challenges the sufficiency of the evidence and the consolidation of the nonreunification and termination proceedings. Finding no error, we affirm.
1. The standard of review applicable to O'Haver's challenge to the sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." (Punctuation omitted.) In the Interest of A.C., 230 Ga.App. 395, 396(1), 496 S.E.2d 752 (1998). "[W]e defer to the trial court's factfinding and affirm unless the appellate standard is not met." (Punctuation omitted.) In the Interest of S.N.N., 230 Ga. App. 109, 495 S.E.2d 602 (1998).
OCGA § 15-11-81(a) sets forth a two-step process to be used in termination of parental rights cases. First, the trial court determines "whether there is present clear and convincing evidence of parental misconduct or inability." Id. Four factors must be present to establish parental misconduct or inability: (1) the child must be deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm. OCGA § 15-11-81(b)(4)(A)(i)-(iv). If the trial court finds that these four factors exist, then in the second step the court determines whether termination of parental rights is in the best interest of the child. In the Interest D.A.P., 234 Ga.App. 257, 259(2), 506 S.E.2d 438 (1998).
As to the first factor, we agree with the juvenile court's determination that the children were deprived. See In the Interest of A.W., 231 Ga.App. 770, 773, 501 S.E.2d 22 (1998); In the Interest of R.D.S.P., 230 Ga. App. 205, 206, 495 S.E.2d 867 (1998). The children, girls then aged ten and five, were first taken into protective custody on a report that N.L.R. had been physically abused. Investigators learned that the children had been living with Linda and Preston Mason, who were not their parents and who did not have legal custody or guardianship, for over a year. Neither the Masons nor the girls knew the whereabouts of their biological mother, O'Haver, or their biological fathers. The children's apparent abandonment justified the initial finding of deprivation. In the Interest of J.M.B., 231 Ga.App. 875, 878(1)(a), 501 S.E.2d 259 (1998). Since no appeal was taken from the deprivation order, O'Haver is bound by the initial deprivation finding. In the Interest of L.H., 236 Ga.App. 132, 134(1), 511 S.E.2d 253 (1999). Therefore, the first factor is satisfied.
As to the second factor, we agree with the juvenile court's determination that the children's deprivation was caused by O'Haver's lack of proper parental care or control. O'Haver argues that severe financial hardship forced her to leave her children in the care of a trusted friend to give her the opportunity to get back on her feet financially. In determining whether the children's deprivation was caused by O'Haver's lack of proper parental care or control, however, the juvenile court was authorized by statute to consider O'Haver's actions following the original finding of deprivation. When the child is not in the custody of the parent whose rights are at issue, OCGA § 15-11-81 directs the trial court to consider whether the parent without justifiable cause failed significantly for a period of one year or longer (1) to communicate or make a bona fide attempt to communicate with the child in a meaningful, supportive, parental manner; (2) to provide for the care and support of the child; and (3) to comply with a court-ordered plan to reunite the child with the parent. OCGA § 15-11-81(b)(4)(C).
*264 In this case, after a three-day hearing, the juvenile court found:
Beginning in July of 1996 and continuing until the children's placement in protective custody in October of 1997, ... the mother failed to visit or telephone the children on a regular basis, and often months at a time would pass without the mother making any inquiry as to the children's welfare. In August of 1996, the child [N.L.R.] disclosed allegations of prior sexual abuse by David Lee O'Haver [the father of A.S.O.] When the mother was informed of the sexual abuse allegations she left town rather than comforting the child during such a traumatic time in the child's life. The mother also did not provide support for her children during this time period. In fact, the mother did not even provide the Masons with the children's clothes and personal effects when she left the children at the Mason home.... The mother says that on the occasions she called the children on the telephone at the Mason home, she would hear the Mason Family in the background verbally abusing her children.
Viewed in the light most favorable to the juvenile court's determination, a rational trier of fact could have found by clear and convincing evidence that during the year prior to the parental rights termination hearing O'Haver failed to develop and maintain a meaningful parental bond with her children. In the Interest of J.M.B., 231 Ga.App. at 878(1)(b), 501 S.E.2d 259.
We also uphold the trial court's finding that the children's deprivation would likely continue if O'Haver retained parental rights. At the time of the termination hearing, O'Haver was still married to A.S.O.'s father (who was accused of molesting N.L.R.) but was living in a sexual relationship with another man. Thus, the evidence supported the juvenile court's determination that the home into which O'Haver wished to bring her children would not provide an environment favoring positive moral development. Dixon v. Dixon, 183 Ga.App. 756, 360 S.E.2d 8 (1987), overruled on other grounds, Wilson v. Baldwin, 239 Ga.App. 327, 328, 519 S.E.2d 251 (1999).
Finally, the record supports the juvenile court's conclusion that continued deprivation is likely to harm the children. The psychologist who evaluated the children concluded that as a result of the lack of a stable home environment the children suffered depression, anxiety, and failure to perform in line with their academic abilities. The psychologist recommended individual therapy and intervention for possible learning disabilities and emphasized their need for immediate placement in a permanent, safe, and secure home. This evidence supports a finding that the children would suffer serious harm if returned to O'Haver. In the Interest of B.L.S., 239 Ga.App. 771, 521 S.E.2d 906 (1999).
As for the second prong of the termination analysis, we are persuaded that the termination of O'Haver's parental rights is in the best interests of the children, considering the children's physical, mental, emotional, and moral condition and their "need for a secure and stable home." OCGA § 15-11-81(a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Punctuation omitted.) In the Interest of C.L.R., 232 Ga. App. 134, 138(2), 501 S.E.2d 296 (1998). Further, there is evidence that the children have remained in a stable foster home since removal from the Masons' custody; that the children are well-adjusted and happy in the foster home; that they have bonded with the foster family; and that the foster family aspires to adopt the children. In particular, N.L.R. expressed a desire to be adopted by the foster family and no desire to visit with O'Haver in the future. This evidence authorizes the juvenile court's finding, via clear and convincing evidence, that termination of parental rights is in the best interests of the children. In the Interest of K.D.S., 237 Ga. App. 865, 867(2), 517 S.E.2d 102 (1999).
2. O'Haver contends that the trial court improperly consolidated the nonreunification proceedings with the termination proceedings. OCGA § 15-11-41(c) requires the Department of Family & Children Services to submit within 30 days of the order removing a child from the home a reunification plan or a report showing that a *265 plan for reunification is not appropriate. Within 30 days of an OCGA § 15-11-41(c) nonreunification report, OCGA § 15-11-41(d) requires the trial court to hold a permanency hearing to review the nonreunification report and to determine whether reunification efforts would be detrimental to the child. In this case, the permanency hearing was not held within 30 days of the filing of the nonreunification report. But O'Haver, through counsel and after notice that the Department intended to expedite termination proceedings, agreed to consolidate the nonreunification hearing with the termination of parental rights action. "Although the procedural requirements of the juvenile court code have been held to be mandatory, such requirements can be waived." In the Interest of C.S., 236 Ga.App. 312, 315(2), 511 S.E.2d 895 (1999). A parent opposing termination proceedings could have strategic reasons for waiving the requirement that the permanency hearing be held within 30 days of the Department's nonreunification report. Having consented to the consolidation of the two hearings, O'Haver cannot challenge this procedure for the first time on appeal. In the Interest of C.A.C., 239 Ga.App. 725, 522 S.E.2d 236 (1999).
Judgment affirmed.
ANDREWS, P.J., and RUFFIN, J., concur.